UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BROADCAST MUSIC INC., et al., | : | CIVIL ACTION NO. 15-6806 (MLC) (DEA) |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| v. | : | |
| HEMINGWAY'S CAFÉ, INC., d/b/a HEMINGWAY's CAFÉ, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiffs Broadcast Music, Inc., a "performing rights society" that licenses the rights to publicly perform copyrighted music on behalf of the copyright owners, and nine copyright owners have filed suit against Defendants Hemingway's Café, Inc., Marilyn Craparotta, and Vincent Craparotta, III, alleging ten acts of copyright infringement for publicly performing copyrighted music without a license. (Dkt. 1 at 2–6.)[1]

Plaintiffs filed this motion for summary judgment seeking judgment in their favor on their copyright claims, statutory damages from Defendants jointly and severally, and attorney's fees and costs. (Dkt. 18.) We have considered all the filings, and resolve the matter without oral argument. See L.Civ.R. 78.1(b).

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by the designation of "dkt." Pincites reference ECF pagination.

For the following reasons, we will grant Plaintiffs' motion for summary judgment, enter judgment in their favor, and award statutory damages and reasonable attorney's fees and costs.

**BACKGROUND**

Plaintiff Broadcast Music, Inc. (BMI) is a "performing rights society" that licenses, on behalf of the copyright owners, the right to publicly perform approximately 10.5 million copyrighted musical compositions. (Dkt. 18-16 at 1–2.) BMI obtains these rights from the copyright owners, which may be either the composer or the music publishing company. (Id.) BMI enters into "blanket license agreements" with various venues, such as restaurants, nightclubs, and concert halls, and grants them the right to stage performances of any of the musical compositions. (Id.)

The other plaintiffs, Stone Diamond Music Corp., Songs of Universal, Inc., Chrysalis Standards, Inc., Dandelion Music Co., EMI Blackwood Music, Inc., Song A Tron Music, Sony/ATV Songs LLC, Sony/ATV Latin Music Publishing, and Universal Music-Z Tunes LLC, are the copyright owners of the specific musical compositions at issue in this litigation. (Dkt. 1 at 2–3; dkt. 18-16 at 1–3.)

Defendant Hemingway's Café, Inc. (Hemingway's Café or Hemingway's) is a New Jersey corporation with a principal place of business in Seaside Heights. (Dkt. 18-2 at 2; dkt. 19-1 at 1.) Hemingway's advertised as a "20,000-square-foot entertainment paradise" that is the "premiere nightlife venue at the Jersey Shore with live entertainment, some of the greatest local DJs and bands, and the largest dance floor at the Jersey Shore." (Dkt. 18-2 at 3; dkt. 19-1 at 1.)

Defendant Marilyn Craparotta is the President of Hemingway's Café, Inc. and she has a direct financial interest in the corporation. (Dkt. 18-2 at 4; dkt. 19-1 at 2.) In 2014, as President, Ms. Craparotta had the ability to direct and control the activities of Hemingway's and to supervise employees. (Dkt. 18-2 at 4; dkt. 19-1 at 2.)

Defendant Vincent Craparotta, III has been the manager of Hemingway's Café since June 2010. (Dkt. 18-2 at 5; dkt. 19-1 at 2; dkt. 19-12 at 1; dkt. 22 at 2.) As manager, his responsibilities included "taking care of all the day to day operations" of Hemingway's, including "scheduling, overseeing ordering, booking entertainment, parties, arranging advertising, and overseeing operations whenever Hemingway's was open." (Dkt. 18-2 at 5; dkt. 19-1 at 2.) In 2013, Mr. Craparotta was also an owner of Hemingway's, had a financial interest in the corporation, and had the right to direct and control the activities of Hemingway's and supervise employees. (Dkt. 18-2 at 5; dkt. 19-1 at 2.)

As part of Hemingway's operation, Defendants allow musical compositions to be publicly performed at the venue. (Dkt. 18-2 at 2; dkt. 19-1 at 1.) Hemingway's advertises live music performances on its website and other social media pages. (Dkt. 18-2 at 2; dkt. 19-1 at 1.)

From June 2010 until May 2016, Defendants did not have a license from BMI for the public performance of BMI-licensed musical compositions. (Dkt. 18-2 at 8; dkt. 19-1 at 2.) During this period, BMI began sending letters to Defendants advising them that a license was required to publicly perform musical compositions licensed by BMI and offering a license agreement. (Dkt. 18-2 at 3; dkt. 19-1 at 1.) BMI then sent letters instructing Defendants to

cease and desist from any public performances of BMI-licensed music at Hemingway's. (Dkt. 18-2 at 3, 9; dkt. 18-9; dkt. 19-1 at 1, 3.)[2]

The following ten BMI-licensed musical compositions were publicly performed at Hemingway's: "Technologic" on July 14, 2013; "Suavemente" on May 10, 2014; "Show Me Love" on May 11, 2014; and "Ain't Too Proud To Beg," "I Can't Help Myself," "It's Not Unusual," "Just My Imagination (Running Away with Me)," "Put Your Head on My Shoulder," "Some Kind of Wonderful, " and "Then You Can Tell Me Goodbye" on October 2, 2014. (Dkt. 18-2 at 6–8; dkt. 18-16 at 2; dkt. 18-17; dkt. 18-18; dkt. 18-19; dkt. 18-20; dkt. 18-21; dkt. 18-22; dkt. 18-23; dkt. 18-24; dkt. 18-25; dkt. 18-26; dkt. 19-1 at 2–3.) Mr. Craparotta booked the individuals who performed the music at Hemingway's on July 14, 2013, May 10, 2014, May 11, 2014, and October 2, 2014, and he was present at Hemingway's on each of these dates. (Dkt. 18-2 at 5; dkt. 19-1 at 2.)

On September 11, 2015, Plaintiffs filed suit against Defendants alleging ten counts of copyright infringement and seeking the imposition of statutory damages. (Dkt. 1.)[3] Defendants did not enter into a licensing agreement with BMI until June 2016; the agreement was made retroactive to May 1, 2016. (Dkt. 18-2 at 4, 9; dkt. 19-1 at 2–3; dkt. 19-12 at 4; dkt. 22 at 3.)

---

[2] The parties dispute whether Defendants received all letters that BMI sent. BMI asserts that it sent forty-seven letters to Defendants. (Dkt. 18-2 at 3.) Defendants Hemingway's and Vincent Craparotta, III (but not Defendant Marilyn Craparotta) acknowledge that they received letters from BMI, but do not admit to the number. (Dkt. 19-1 at 1.)

[3] Defendants filed an Answer (dkt. 8), and then moved to file an Amended Answer (dkt. 20) to raise two new affirmative defenses. That motion was denied (dkt. 29), and there are no affirmative defenses in the case for us to consider.

# DISCUSSION

## I. Summary Judgment

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-movant must then present evidence that raises a genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted). This evidence may include "citing to particular parts of materials in the record" or a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

### B. Analysis

Our analysis proceeds in three parts. First, we assess whether Plaintiff's copyrighted music was infringed. Second, we discuss who can be held liable for the infringement. Third, we consider statutory damages. Based on the evidence presented, we conclude that ten musical compositions copyrighted by Plaintiffs were infringed, that Defendants Hemingway's Café, Inc., Marilyn Craparotta, and Vincent Craparotta, III are jointly and severally liable for those infringements, and that statutory damages should be awarded to Plaintiffs.

### 1. Infringement

To establish copyright infringement under the Copyright Act, a plaintiff must demonstrate: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) (internal quotations omitted).

With respect to infringement of a copyright based on unauthorized public performance of a musical composition, a plaintiff must demonstrate: "(1) originality and authorship of the composition; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the work involved; (4) public performance of the composition involved for profit; and (5) lack of authorization for public performance." Broad. Music, Inc. v. 84-88 Broadway, Inc., 942 F. Supp. 225, 229 (D.N.J. 1996); accord Broad. Music, Inc. v. Prana Hospitality, Inc., 158 F. Supp. 3d 184, 191 (S.D.N.Y. 2016). "Innocent intent is generally not a defense to copyright infringement." Williams Electronics v. Artic Int'l, Inc., 685 F.2d 870, 878 (3rd Cir. 1982).

Defendants do not challenge the existence of any of the ten violations. The facts establishing the violations are not in dispute. We find that Plaintiffs have demonstrated that they are entitled to summary judgment on their copyright claims against Defendants.

For each of the ten musical compositions, Plaintiffs have established the names of the authors and publishers of the composition, the date of the copyright registration, the registration number, as well as the ownership of each composition. (Dkt. 1 at 7–10; dkt. 18-16 at 2; dkt. 18-17 ("Ain't Too Proud To Beg"); dkt. 18-18 ("I Can't Help Myself"); dkt. 18-19 ("It's Not Unusual"); dkt. 18-20 ("Just My Imagination (Running Away with Me)"); dkt. 18-21 ("Put Your Head on My Shoulder"); dkt. 18-22 ("Show Me Love"); dkt. 18-23 ("Some Kind of Wonderful"); dkt. 18-24 ("Suavemente"); dkt. 18-25 ("Technologic"); dkt. 18-26 ("Then You Can Tell Me Goodbye").). Therefore, we find that the Plaintiffs have demonstrated the first three elements of direct infringement—the originality and authorship of each of the ten musical compositions, compliance with the Copyright Act, and BMI's ownership of each of the ten copyrights. See Prana Hospitality, 158 F. Supp. 3d at 192 (affidavit and documentation sufficient to establish first three elements of copyright infringement claim).

Defendants do not dispute that these ten musical compositions were each publicly performed once at Hemingway's Café on July 14, 2013 (one performance), May 10, 2014 (one performance), May 11, 2014 (one performance), and October 2, 2014 (seven total performances). (Dkt. 18-2 at 6–7; 18-10 at 3– 5; dkt. 18-11 (July 2013); dkt. 18-12 (May 2014); dkt. 18-13 (Oct. 2014); dkt. 19-1 at 2–3.) Lastly, Defendants admit that they were not licensed to publicly perform any of these ten musical compositions on these days. (Dkt. 18-2 at 8; dkt. 19-1 at 2.)

There is no genuine issue of material fact that Defendants committed ten acts of copyright infringement, in violation of the Copyright Act, by publicly performing ten musical

compositions owned by Plaintiffs without authorization. Therefore, we will enter summary judgment in favor of Plaintiffs on their copyright infringement claims.

### 2. Liability

Anyone who violates the rights of a copyright owner pursuant to the Copyright Act is an infringer of the copyright. 17 U.S.C. § 501(a). An individual may be held liable, under secondary liability theories, even if that person is not the person who performed the protected musical composition. Secondary liability, including contributory and vicarious infringement, "does not exist in the absence of direct infringement by a third party." Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 386 (3d Cir. 2016). "While the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn, in general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities." Id. at 386 n.8 (internal quotations omitted). A plaintiff does not need to sue the third party to file suit against a defendant under theories of secondary liability. Arista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 416 (D.N.J. 2005)

Vicarious infringement occurs when a person or entity "profit[s] from direct infringement while declining to exercise a right to stop or limit it." MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). To demonstrate vicarious infringement, a plaintiff must establish that the defendant had "(1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." Leonard, 834 F.3d at 388. A plaintiff need only demonstrate these two elements and does not need to prove a

defendant's knowledge of the infringing activity. Arista Records, Inc. v. Flea World, Inc. (Arista Records II), No. 03-2670, 2006 WL 842883, at *9 (D.N.J. Mar. 31, 2006).

"One infringes contributorily by intentionally inducing or encouraging direct infringement." Grokster, 545 U.S. at 930. For contributory infringement, a plaintiff must demonstrate that the defendant "knew that the third party was directly infringing" and that the defendant "materially contributed to or induced the infringement." Leonard, 834 F.3d at 387. Actual knowledge is not required; constructive knowledge of infringement is sufficient to meet this burden. Arista Records II, 2006 WL 842883, at *14; see also A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1020 (9th Cir. 2001) (contributory negligence only requires that the secondary infringer "know or have reason to know of direct infringement" (quotation omitted)). "Willful blindness is knowledge" of infringement. In re Aimster Copyright Litig., 334 F.3d 643, 650 (7th Cir. 2003).

Individual infringers can be held personally liable, jointly and severally, with corporate infringers for each act of copyright infringement. Columbia Pictures Indus. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984); Premium Sports, Inc. v. Pereira, No. 14-6240, 2015 WL 5770517, at *4 (D.N.J. Sept. 30, 2015).

We find no genuine issue of material fact that Defendants Hemingway's Café, Marilyn Craparotta, and Vincent Craparotta, III are each liable for copyright violations.

Hemingway's Café, Inc.

Defendant Hemingway's Café, Inc. is vicariously liable for all ten acts of copyright infringement that occurred on premises. See Leonard, 834 F.3d at 388; Arista Records II, 2006 WL 842883, at *9. Defendants do not contest this. Hemingway's has acknowledged

9

that on July 14, 2013, May 10, 2014, May 11, 2014, and October 2, 2014, it had the right and ability to supervise and control the public performances on the premises. (Dkt. 18-2 at 4; dkt. 19-1 at 2.) Hemingway's had a direct financial interest in these performances. (Dkt. 18-2 at 4; dkt. 19-1 at 2.)

Marilyn Craparotta

Plaintiffs seek to hold Defendant Marilyn Craparotta vicariously liable for nine of the ten acts of copyright infringement —those on May 10, 2014, May 11, 2014, and October 2, 2014. (Dkt. 18-1 at 17.) Plaintiffs do not seek liability against Ms. Craparotta for the infringement on July 14, 2013, because she disputes that she was President of Hemingway's Café on that date. (Dkt. 18-1 at 17 n.2.) In response, Ms. Craparotta first admits that she had the right and ability to direct and control the activities of Hemingway's on the three days in question, and that she had a direct financial interest in Hemingway's. (Dkt. 19 at 9.) She adds that "Admittedly, the admissions constitute liability under the case law." (Id.) She argues, however, that liability should not be imposed because had she been contacted in December 2013, then the nine acts of infringement on those three days in 2014 would not have occurred. (Id. at 9–10.) Plaintiffs note that BMI notified Ms. Craparotta by sending letters to Hemingway's Café, where she was owner and president. (Dkt. 21 at 7.) Plaintiffs also point out that knowledge is not required to prove vicarious liability. (Id. at 7–8.)

We find that the undisputed evidence demonstrates that Defendant Marilyn Craparotta was vicariously liable for nine acts of copyright infringement at Hemingway's Café on May 10, 2014, May 11, 2014, and October 2, 2014. On those dates, Ms. Craparotta was the President of Hemingway's Café, Inc. and she had a direct financial interest in the corporation.

10

(Dkt. 18-2 at 4; dkt. 19-1 at 2.) In that capacity, she had the ability to direct and control the activities of Hemingway's and to supervise employees. (Dkt. 18-2 at 4; dkt. 19-1 at 2.) Plaintiffs do not need to demonstrate that she had knowledge of the infringing activities at the time of infringement. See Arista Records II, 2006 WL 842883, at *9. Therefore, we conclude that Plaintiffs have demonstrated that Defendant Marilyn Craparotta is vicariously liable for nine acts of copyright infringement.

Vincent Craparotta, III

Plaintiffs ask us to hold Defendant Vincent Craparotta, III vicariously liable for the one act of copyright infringement on July 14, 2013 and contributorily liable for all ten acts of copyright infringement. (Dkt. 18-1 at 18 & n.3.) Mr. Craparotta acknowledges that "[his] conduct falls within the legal definition for contributory negligence," but he argues that he was inexperienced as a manager and also that Plaintiffs should have filed suit at an earlier time. (Dkt. 19 at 11–12.)

Defendants do not contest that Mr. Craparotta is vicariously liable for one act of copyright infringement on July 14, 2013. He has admitted that, on that date, he was owner of Hemingway's Café and a direct financial interest in it, and that he had the right and ability to direct and control Hemingway's activities and to direct and supervise Hemingway's employees. (Dkt. 18-2 at 5; dkt. 19-1 at 2.) Thus, we find no genuine issue of material fact that Defendant Vincent Craparotta, III is vicariously liable for the copyright infringement on July 14, 2013. See Leonard, 834 F.3d at 388; Arista Records II, 2006 WL 842883, at *9.

On July 14, 2013, May 10, 2014, May 11, 2014, and October 2, 2014, Mr. Craparotta was manager of Hemingway's. (Dkt. 18-2 at 5; dkt. 19-1 at 2.) On each of these days, he

was present at Hemingway's, and he booked and/or hired the individuals who publicly performed the music at Hemingway's on those days. (Dkt. 18-2 at 5; dkt. 19-1 at 2.) The record demonstrates that he "knew that the third party was directly infringing" and that he "materially contributed to or induced the infringement." See Leonard, 834 F.3d at 387. Contrary to Defendants' arguments, Mr. Craparotta's inexperience as manager is not germane to our analysis because his actual knowledge of the infringing activities is not required for a finding of contributory infringement. See A&M Records, Inc., 239 F.3d at 1020; Arista Records II, 2006 WL 842883, at *14. Therefore, we find that Defendant Vincent Craparotta, III is contributorily liable for all ten acts of copyright infringement.

### 3. Statutory Damages

Plaintiffs ask us to impose statutory damages from Defendants' infringing activities, rather than actual damages. (Dkt. 18-1 at 22.) Specifically, they seek $11,000 per act of infringement, totaling $110,000, which they contend is less than twice the amount BMI would have received had Defendants entered into a license agreement. (Dkt. 18-1 at 22–27; dkt. 18-2 at 10.) They cite $56,595 as the cost for Defendants to have secured a license agreement. (Dkt. 18-10 at 6.) Defendants dispute that amount. (Dkt. 19-1 at 3.)[4]

Instead of pursuing actual damages, a copyright owner may seek an award of statutory damages per infringement "in a sum of not less than $750 or more than $30,000 as the court

---

[4] Defendants moved to amend their Answer to raise the affirmative defenses of the doctrine of avoidable consequences and the failure to mitigate damages. (Dkt. 20.) Their motion to amend was denied. (Dkt. 29.) We therefore do not consider these affirmative defenses. Nonetheless, we note that it is unclear whether these defenses would even be applicable against a claim seeking statutory damages under the Copyright Act. See Purzel Video GmbH v. St. Pierre, 10 F. Supp. 3d 1158, 1169 (D. Colo. 2013) ("A copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense.").

considers just." 17 U.S.C. § 504(c)(1). At the request of the copyright owner, the court may find that the infringer acted willfully and increase the damages for an infringement up to $150,000. 17 U.S.C. § 504(c)(2). We have discretion to impose damages in an amount between the statutory minimum and maximum. See Broad. Music, Inc. v. Crocodile Rock Corp., 634 F. App'x 884, 886 (3d Cir. 2015) (citing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232 (1952)); see also Broadcast Music v. DeGallo, Inc., 872 F. Supp. 167, 169 (D.N.J. 1995) (""[T]he statute was designed to deal with infringers ranging from relatively small nightclubs, such as the one presented here, to large scale pirates, broadcasting across the country on electronic media. With due allowance for the level of culpability involved, the penalty must be proportionate to the extent of the infringement.").

"Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD, 555 F. Supp. 2d 537, 544 (E.D. Pa. May 21, 2008) (quotation omitted). An infringer should not reap a benefit from its violation of the law. Id. Thus, we have explained that "[s]tatutory damages should exceed the unpaid license fees so that defendant will be put on notice that it costs less to obey the copyright laws than to violate them." Microsoft Corp. v. Gonzales, No. 06-4331, 2007 WL 2066363, at *6 (D.N.J. July 13, 2007).

When assessing the appropriate amount of statutory damages, we consider four factors:

> (1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental.

Id. at *5 (citing Broadcast Music, Inc. v. Golden Horse Inn Corp., 709 F. Supp. 580, 581 (E.D. Pa. 1989)). "Because several of the factors are difficult to monetize, the defendant's intent and behavior are the foremost consideration." Id. Thus, we may consider the willfulness of the Defendants' conduct, even though Plaintiffs have not sought enhanced damages under the willful provision. Prana Hospitality, 158 F. Supp. 3d at 197 ("Where, as here, the plaintiff does not seek a willfulness enhancement, it is still appropriate for the Court to consider evidence of willfulness in determining where in the range between $750.00 and $30,000.00 damages should be set." (quotation omitted)).

We have previously noted that courts throughout the Third Circuit commonly award statutory damages to a plaintiff in amounts between two to five times the amount that a defendant would have paid in licensing fees. Broad. Music, Inc. v. Publick House Partners, LLC, No. 13-03326, 2015 WL 3396804, at *3 (D.N.J. May 26, 2015) (collecting cases); accord Broad. Music, Inc. v. Amici III, Inc., No. 14-5002, 2014 WL 7271915, at *1 n.1 (D.N.J. Dec. 16, 2014) (citing cases imposing damages two to five times greater than licensing fees to show "rough baseline" of what courts nationwide have done).

The first item we must resolve is the amount of BMI's lost fees—that is, the amount in fees Defendants would have paid BMI for a licensing agreement had they not engaged in the infringing conduct. BMI "estimated" the fees at "approximately $56,595.00." (Dkt. 18-10 at 6.) Defendants note that the record supports a different amount. (Dkt. 19-1 at 3.) On October

24, 2014, BMI sent letters to Marilyn Craparrota and Vincent Craparrotta, III indicating that the total annual licensing fees that they owed for the five years between June 1, 2010 and May 31, 2015 was $47,520.00. (Dkt. 18-4 at 65–68; dkt. 18-14 at 51–53.) The letters also included a one-time fee of $1,020.55 for "Music Researcher Costs." (Dkt. 18-4 at 65–68; dkt. 18-14 at 51–53.) Defendants do not dispute the costs for annual licensing fees set forth in the letters. (Dkt. 19-1 at 3.)[5]

Plaintiffs seek statutory damages based on the entire time that Defendants operated without a licensing fee agreement. Plaintiffs, however, make no argument as to why they should receive statutory damages for periods of time when no asserted violation occurred. All ten statutory violations (on July 14, 2013, May 10, 2014, May 11, 2014, and October 2, 2014) were within a timeframe that would have been covered by just two annual licensing periods (June 1, 2013 to May 31, 2014 and June 1, 2014 to May 31, 2015) —not across the nearly six years of annual licensing periods June 1, 2010 through April 2016. We have not found any copyright violations by Defendants, nor have Plaintiffs claimed that any occurred, during the annual periods of June 1, 2010 to May 31, 2011, June 1, 2011 to May 31, 2012, June 1, 2012 to May 31, 2013, or June 2015 to April 2016. We will not impose statutory damages for a time period where we have not found, nor were we asked to find, any violations of the copyright laws. Plaintiffs chose to seek statutory damages, rather than actual damages, and while Plaintiffs may have had a claim for actual damages during these periods where

---

[5] We note that the estimate cited by Plaintiffs from the Brian Mullaney Declaration covers the time between June 2010 and April 2016 (dkt. 18-10 at 6), whereas the letters cover the time between June 2010 through May 2015 (dkt. 18-4 at 65–68; dkt. 18-14 at 51–53). Because we ultimately conclude that the relevant time period for the fees that Plaintiffs would have paid to license the music is limited to the years where we have found that Defendants infringed the copyright, we need not resolve any discrepancy between the Mullaney Declaration and the October 24, 2014 letters.

Defendants did not have a licensing agreement, we will not impose statutory damages on Defendants for periods when there were no statutory violations.[6]

As such, we find that the appropriate basis to measure the statutory damages is the amount in licensing fees Defendants would have paid to BMI for the two annual periods, June 1, 2013 to May 31, 2014 and June 1, 2014 to May 31, 2015, during which time the ten infringements of Plaintiff's music occurred. BMI indicated to Defendants that the licensing fee for June 1, 2013 to May 31, 2014 was $9,680.00 and that the licensing fee for June 1, 2014 to May 31, 2015 was $9,900.00. (Dkt. 18-4 at 65–68; dkt. 18-14 at 51–53.) As those fee amounts are uncontested by Defendants, we will adopt them.

Next, in order to award statutory damages, we must decide the appropriate multiplier to apply to the base amount of the unpaid licensing fees. As discussed, we generally find a multiplier of two to five times the amount that a defendant would have paid in licensing fees as appropriate for assessing statutory damages. Publick House Partners, 2015 WL 3396804, at *3; Amici III, 2014 WL 7271915, at *1 n.1.

Although Plaintiffs do not seek a willfulness enhancement, we still consider the willfulness of Defendants' infringement. See Prana Hospitality, 158 F. Supp. 3d at 197. We place substantial weight on Defendant's intent and willful conduct. See Microsoft Corp., 2007 WL 2066363, at *5. Defendants operated without a licensing agreement with BMI for nearly six years but had public performances of Plaintiffs' copyrighted music. (Dkt. 18-2 at 8; dkt. 19-1 at 2.) Throughout this time, BMI made numerous attempts, including sending

---

[6] We also note the potential statute of limitations issues on any alleged violation accruing more than three years before the initiation of the suit. See 17 U.S.C. § 507(b).

16

forty-seven letters, to warn Defendants of their copyright infringement and to offer Defendants the opportunity to enter into a licensing agreement, yet Defendants ignored those attempts. (Dkt. 18-2 at 3; dkt. 19-1 at 1–2.) Indeed, even after the initiation of this lawsuit in September 2015, Defendants continued with public performances of Plaintiffs' copyrighted music through May 2016 before entering into a licensing agreement in June 2016 made effective retroactively to May 1, 2016. (Dkt. 18-2 at 9; dkt. 19-1 at 3.) Given the repeated infringing conduct that we find to be willful, we impose statutory damages three times the amount that Defendants would have paid to BMI in licensing fees for the two annual periods of June 1, 2013 to May 31, 2014 and June 1, 2014 to May 31, 2015. See, e.g., Publick House Partners, 2015 WL 3396804, at *3 (imposing statutory damages three times the unpaid license fees given the defendants' "willful disregard of [Plaintiff's] persistent communications and warnings to Defendants, including dozens of letters and seventy phone calls").

While we have only found statutory violations between June 1, 2013 and May 31, 2015, and we use the annual licensing fee for those two years as the base, we are nonetheless mindful of the fact that it is undisputed that Defendants did not have a licensing fee the entire time from June 1, 2010 through April 30, 2016. One of the aims of statutory damages is to ensure that infringers do not benefit from their infringing activity. Were we to impose a penalty less than the total cost of the nearly six years of unpaid licensing fees, Defendants would receive a windfall from their conduct, and would still be in a better position having failed to secure a license than having paid for the licensing agreement, because the penalty for infringement would be less than the cost for licensing for the entire period. Thus, imposing the penalty of three times the base licensing fee also ensures that Defendants pay more in

penalty than they would have, had they simply complied with the copyright laws in the first place and licensed the copyrighted music that they had publicly performed. See Spring Mt. Area Bavarian Resort, 555 F. Supp. 2d at 544; Microsoft Corp., 2007 WL 2066363, at *6.

We will impose statutory damages as follows:

For the three violations (July 14, 2013, May 10, 2014, and May 11, 2014) occurring during the June 1, 2013 to May 31, 2014 licensing period, we award statutory damages in favor of BMI in the amount of $29,040.00, which is three times the price BMI listed for the licensing fee for the period ($9,680.00).

For the seven violations on October 2, 2014 that occurred during the June 1, 2014 to May 31, 2015 licensing period, we award statutory damages in favor of BMI in the amount of $29,700.00, which is three times the price BMI listed for the licensing fee for the period ($9,900.00).

In total, the amount of damages awarded to Plaintiffs is $58,740.00.

Defendant Hemingway's Café and Defendant Vincent Craparotta, III are jointly and severally liable for the entire amount; Defendant Marilyn Craparotta is jointly and severally liable for $49,060.00[7] of that total sum for nine of the violations (excluding the violation on July 14, 2013, as discussed supra, Section I.B.2). See Columbia Pictures, 749 F.2d at 160; Premium Sports, 2015 WL 5770517, at *4.[8]

---

[7] We calculate this sum as $19,360.00 for the May 10 and 11, 2014 violations and the full $29,700.00 for the seven violations on October 2, 2014.

[8] In their conclusion, Plaintiffs also ask for an award of interest pursuant to 28 U.S.C. § 1961. (Dkt. 18-1 at 28.) Plaintiffs do not explain why we should exercise our discretionary authority and award interest. Because Plaintiffs have not demonstrated that this action rises to the level of an exceptional

18

## II. Attorney's Fees and Costs

Plaintiffs also ask us to award attorney's fees and costs. (Dkt. 18-1 at 27–28.) Defendants did not oppose the award of costs and fees. The Copyright Act grants the court discretion to "allow the recovery of full costs by or against any party other than the United States or an officer thereof" and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs 'generally' or 'ordinarily.'" Axact (PVT), Ltd. v. Student Network Res., Inc., No. 07-5491, 2008 WL 4754907, at *3 (D.N.J. Oct. 22, 2008). See, e.g., Yash Raj Films (USA) Inc. v. Rannade Corp., No. 01-5779, 2007 WL 1456193, at *12 (D.N.J. May 17, 2007) ("Circumstances warranting an award of attorney's fees to a plaintiff include the defendant's deliberate infringement and the need for compensation to a party for defending or enforcing its copyrights.") We will award attorney's fees and costs to Plaintiffs.

## CONCLUSION

For the reasons stated above, we grant Plaintiff's motion for summary judgment, we enter judgment in their favor awarding $58,740.00 in statutory damages, and we will award reasonable attorney's fees and costs.

We will enter an appropriate order and judgment.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** June 28, 2017

---

case where interest should be awarded, their request for interest is denied. See Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 689 n.11 (D.N.J. 2015).